UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 13 DEFINED CONTRIBUTION PENSION TRUST FOR SOUTHERN NEVADA; TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 13 HEALTH BENEFITS FUND; TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 13 VACATION FUND; BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 13 NEVADA; TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND; TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL HEALTH FUND; and TRUSTEES OF THE INTERNATIONAL MASONRY INSTITUTE,<br><br>Plaintiffs,<br><br>v.<br><br>TUMBLEWEED DEVELOPMENT, INC., a Nevada corporation,<br><br>Defendant. | Case No. 2:12-cv-01114-MMD-PAL<br><br>ORDER<br><br>(Plf.'s Motion for Default Judgment – dkt. no. 8) |

**I.    SUMMARY**

Before the Court is Plaintiff's Motion for Default Judgment.  (Dkt. no. 8.) Defendant Tumbleweed Development ("Tumbleweed") has not responded.  For the reasons stated below, the Motion is granted.

**II.    BACKGROUND**

This suit arises from unpaid fringe benefit contributions under a Collective Bargaining Agreement, an employee benefit program governed by the Employee

Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs' Complaint alleges the following facts:

Plaintiffs are labor organizations representing building and construction employees working in Nevada. Plaintiffs and the employees are parties to a Trust Agreement created and maintained pursuant to the Labor Management Relations Act of 1947 ("LMRA"). 29 U.S.C. § 185(a). Plaintiffs are fiduciaries of the Trust Agreements and have standing to sue on behalf of the employees. ERISA, 29 U.S.C. § 1002(21)(A). The employees were parties to a collective bargaining agreement ("CBA") governed by ERISA with Granite Works, a non-party. Per the terms of the CBA, Granite Works was required to pay monthly fringe benefit contributions to the Plaintiffs, as trustees, for each hour worked by the employees. Additionally, Granite Works was required to report the names of the employees and hours worked on a monthly basis.

Between February 12, 2008, and September 30, 2009, Defendant Tumbleweed subcontracted work to Granite Works. During that time, Granite Works failed to pay the required fringe benefit contributions. Plaintiffs obtained judgment against Granite Works, *see* 2:10-cv-00767-HDM-PAL, but Granite Works still refuses to cure the breach of its obligations. Plaintiffs now seek to recover the unpaid fringe benefit contributions from Tumbleweed, the original contractor, as allowed by Nevada law.

On June 26, 2012, Plaintiffs filed the Complaint against Tumbleweed, as the original contractor, alleging one claim: statutory damages under NRS § 608.150, which extends subcontractor liability to contractors for indebtedness of labor. Defendant Tumbleweed was served with the summons and complaint on June 29, 2012, with service made on Tumbleweed's registered agent. Defendant Tumbleweed has not appeared or answered. On July 31, 2012, the Clerk of the Court entered default against Defendant Tumbleweed. Plaintiffs now request default judgment against Defendant Tumbleweed.

///

///

### III. LEGAL STANDARD

Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

### IV. DISCUSSION

#### A. Procedural Requirements

Plaintiffs have satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). First, the Clerk properly entered a default against Defendant pursuant to Fed. R. Civ. P. 55(a). (Dkt. no. 8.) Second, Defendant is not an infant or incompetent person, and is not otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. Third, insofar as Defendant has not answered or otherwise

responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated. Thus, there is no procedural impediment to entering a default judgment.

    **B.**    ***Eitel* Factors**

        **1.**    **Possibility of Prejudice**

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002). Here, Defendant has not answered, made an appearance, or otherwise responded to the Complaint. Due to Defendant's refusal to appear in this action, there is the possibility of prejudice to Plaintiffs in the absence of default judgment If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery. Thus, this *Eitel* factor weighs in favor of entering default judgment.

        **2.**    **Substantive Merits and Sufficiency of the Complaint**

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see also* Fed. R. Civ. P. 8. Here, Plaintiffs state a single claim for statutory damages under NRS § 608.150. Under Nevada law,

> "every original contractor making or taking any contract in this State for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapters 616A to 617, inclusive, of NRS." NRS 608.150(1).

"Indebtedness for labor" includes delinquent fringe benefit payments. *See Tobler & Oliver Const. Co. v. Bd. of Trustees of the Health and Ins. Fund for Carpenters Local Union No. 971*, 442 P.2d 904, 906 (Nev. 1968).

Plaintiffs have alleged that Tumbleweed was the original contractor on several construction projects with Granite Works as its subcontractor. Plaintiffs have alleged

4

that Granite Works has failed to make required contractual payments and therefore there is indebtedness for labor incurred. Plaintiffs have also alleged that Tumbleweed, as the original contractor, is liable for money owed by Granite Works to the employees who performed the labor. Therefore, Plaintiffs have sufficiently stated a claim for relief under Nevada law.

As to the amount of damages, ERISA explicitly provides for the recovery of unpaid contributions, interest on the unpaid contributions, liquidated damages,[1] attorney's fees and costs, and other relief deemed appropriate. 29 U.S.C. § 1132(g)(2). Plaintiffs have adequately alleged the allowable unpaid fringe benefit contributions, interest, liquidated damages, and attorneys' fees and costs as damages. Accordingly, Plaintiffs have sufficiently stated the appropriate claim for damage relief.

### 3.     Sum of Money at Stake

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of [a defendant's] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Plaintiffs seek $6,815.61 for unpaid fringe benefit contributions, $954.19 in accrued interest, $1,363.12 in liquidated damages, and $5,614.97 in attorneys' fees and costs. Assuming the facts alleged in the Complaint as true, there is a significant amount of money at stake due to Defendant's failure to pay the fringe benefits. Therefore, the recovery is proportional to the harm. The fourth *Eitel* factor weighs in favor of entry of default judgment.

///

///

---

[1] The statute provides for the greater of (i) interest on the unpaid contributions or (ii) liquidated damages under the agreement not to exceed 20 percent. 29 U.S.C. § 1132(g)(2)(c)(i-ii). Here, the liquidated damages of 20 percent under the agreement is greater and therefore, the basis of the calculation.

**4.   Possible Dispute**

The fifth *Eitel* factor considers the possibility of dispute as to any material fact in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion. The fifth *Eitel* factor weighs in favor of entry of default judgment.

**5.   Excusable Neglect**

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. The evidence shows Defendant Tumbleweed was served with the summons and complaint on June 29, 2012, with service made on Tumbleweed's registered agent, pursuant to Fed. R. Civ. P. 4(f). (Dkt. no. 5.). Defendant received service of the Summons and Complaint one month before the Clerk's Entry of Default on July 31, 2012. (Dkt. no. 7). Thus, given the period of time during which Defendant had notice of the Complaint and in which Defendant failed to answer or otherwise respond to the Complaint, it is unlikely that Defendant's failure to respond and subsequent default resulted from excusable neglect.

**6.   Decision on the Merits**

The seventh *Eitel* factor states that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Thus, the Court is not precluded from entering default judgment against Defendant.

In sum, the *Eitel* factors weight in favor of default judgment.

**C.   Attorney's Fees and Costs**

The Ninth Circuit affords trial courts broad discretion in determining the reasonableness of costs and fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.

1992). Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Next, the court decides whether to adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild*, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted). Here, the *Kerr* factors are not implicated.

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community for "similar services by lawyers of reasonably comparable skill, experience and reputation." *See id.*; *see also Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).

In addition to evidence supporting the rates claimed, "[t]he party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also Jordan*, 815 F.2d at 1263. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "The district court also should exclude from this initial fee calculation hours that were 'not reasonably expended'." *Hensley*, 461 U.S. at 433-34 (citation omitted). "In other words, the court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Business Factors, Inc.*, 897 F. Supp. 458, 460 (D. Nev. 1995) (quotation omitted); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

Plaintiff requests reimbursement of attorney's fees at $100.00 for paralegals, $170.00 for associates, and $275.00 an hour for partner's time. Based on the affidavits of Plaintiffs' counsel and the Court's experience, the Court finds these rates to be

reasonable. After reviewing Plaintiffs' attached exhibits, the Court finds that Plaintiff's calculation of attorney and staff labor is a reasonable amount of time spent on this litigation. This is especially true as Plaintiffs' Counsel spent considerable time and effort attempting to obtain the unpaid benefits to no avail prior to bringing suit. Furthermore, the Court finds Plaintiffs' fee request to also be reasonable. Therefore, the Court orders attorney's fees and costs in the requested amount of $5,614.97.

**V.    CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Default Judgment is GRANTED.

The Clerk of the Court shall enter judgment against the Defendant Tumbleweed Development in the amount of $9,132.92 plus attorney's fees and costs in the amount of $5,614.97.

The Clerk of the Court is directed to close this case.

DATED THIS 11th day of January 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE